UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 08-228-GWU

PETER LEE EPPERSON,     PLAINTIFF,

VS.     **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,     DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of his applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The appeal is currently before the court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to

1

        Step 4.  If no, the claimant is not disabled.  <u>See</u> 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

4.     Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months?  If yes, proceed to Step 5.  If no, the claimant is not disabled.  <u>See</u> 20 C.F.R. 404.920(d), 416.920(d).

5.     Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)?  If yes, the claimant is disabled.  If no, proceed to Step 6.  <u>See</u> 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.     Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work?  If yes, the claimant was not disabled.  If no, proceed to Step 7.  <u>See</u> 20 C.F.R. 404.1520(e), 416.920(e).

7.     Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy?  If yes, the claimant is not disabled.  <u>See</u> 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

<u>Garner v. Heckler</u>, 745 F.2d 383, 387 (6th Cir. 1984).

    Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply.  Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence.  <u>Jones v. Secretary of Health and Human Services</u>, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial

evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982).  This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984).  Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987).  These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain.  Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. § 404.1529 (1991).  However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition.  If there is, we then examine:  (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment.  The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability.  Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984).  However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations.  Id.  Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups.  Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987).  Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way

to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

    Additional information concerning the specific steps in the test is in order.

    Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987).  The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).  However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all.  Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case.  Id. at 1053.

    Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had.  E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

08-228 Peter Lee Epperson

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. § 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid.

In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.  Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Peter Epperson, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of being status post right ankle fusion with residuals, as well as having arthralgias, migraines, and anxiety-related disorders. (Tr. 13).  Nevertheless, based in part on the testimony of a Vocational Expert (VE), the ALJ determined that Mr. Epperson retained the residual functional capacity to perform his past relevant work as a cook, hardwood floor installer, auto parts deliverer, assembly line worker, and dish washer, and accordingly was not entitled to benefits.  (Tr. 16-20).  The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ asked the VE whether a person of the plaintiff's age, education, and work experience could perform any jobs if he were limited to "medium" level exertion, and could only occasionally stoop, bend, crouch, crawl, or climb ladders, ropes, or scaffolds.  (Tr. 362).  The VE responded that with

08-228 Peter Lee Epperson

such restrictions, the individual could perform all of the plaintiff's past relevant work except for the positions at the "heavy" exertional level. (Id.). In the alternative, the VE identified other light and sedentary jobs which would be compatible with the hypothetical question and proceeded to give the numbers in which they existed in the state and national economies. (Tr. 362-3).

On appeal, this court must determine whether the administrative decision is supported by substantial evidence.

The plaintiff alleged disability due to depression, anxiety, and pain in his back, hip, knee, and ankle, as well as frequent migraine headaches and hepatitis C, which caused fatigue. (Tr. 68). The plaintiff does not raise any issues regarding the ALJ's finding that there were no psychological restrictions. (Tr. 17).

The plaintiff does argue that the ALJ committed error in not providing a sufficient rationale for rejecting the opinions of his treating physicians. The court agrees, for reasons stated below. However, there is an additional issue in that the hypothetical question omitted any restriction on reaching. The ALJ's decision indicates that she intended to include reaching in the hypothetical question (Tr. 16), which is consistent with her statement that the hypothetical factors were drawn from assessments by state agency physicians and a consultative examiner, Dr. Christopher Walters (Tr. 18). Dr. Walters had noted that the plaintiff likely had degenerative disease of the shoulders and stated there was physical evidence for

08-228  Peter Lee Epperson

moderate restrictions in Mr. Epperson's tolerance for reaching.  (Tr. 191-2).  The state agency reviewers, Dr. P. Saranga and Dr. R. K. Brown, limited the plaintiff to occasional overhead reaching.  (Tr. 201, 249).

Social Security Ruling (SSR) 85-15 states that reaching and handling "are activities required in almost all jobs" and that "[s]ignificant limitations of reaching or handling . . . may eliminate large numbers of occupations a person could otherwise do."  It goes on to provide that varying degrees of limitations would have different effects and the assistance of a VE might be needed to determine these effects.  SSR 85-15, p. 7.  It appears that, from a check of the Dictionary of Occupational Titles (DOT), that most if not all of the jobs described by the VE in response to the hypothetical question require either frequent or constant reaching.[1]  Therefore, the omission of this factor from the hypothetical results in the VE's testimony being unreliable.

While this problem alone requires a remand, the court notes that the detailed opinions given by two physicians who treated the plaintiff, Dr. Todd Hockenbury, an orthopedist, and Dr. Susan Johns, a family practitioner, were rejected by the ALJ

---

[1] As examples, the job of cook, DOT 313.361-014, auto parts deliverer, DOT 299.477-010, and auto assembler, DOT 806.684-010, are said to require "frequent" reaching, while the job of kitchen helper, DOT 318.687-010 (which appears to include the duties of a dish washer), is said to require "constant" reaching.  The same requirements are present for the alternative unskilled jobs as a deliverer, stock control clerk, messenger, and assembler/inspector/packager.

08-228 Peter Lee Epperson

with the very brief explanation that they were not supported by objective evidence or consistent with the physician's own treatment notes or other medical evidence in the record. (Tr. 18).[2] The ALJ also stated that an opinion that the plaintiff was "disabled" or not able to work was a conclusion outside their area of expertise. (Id.). To the extent that the ALJ was rejecting statements that the plaintiff would not be able to do any job (Tr. 307, 319) the ALJ is correct.

Concerning objective evidence, however, Dr. Hockenbury diagnosed right ankle pseudoarthrosis, right subtalar arthritis, a right leg length discrepancy, and mechanical low back pain. (Tr. 302). His office notes indicated that the plaintiff had a scar and skin graft on his right ankle from previous surgery, a positive Tinel's sign over the tarsal tunnel with radiation, and a reduced range of motion of the right ankle. (Tr. 314). Dr. Hockenbury obtained an x-ray showing complete erosion of the distal lateral two-thirds of the distal tibia, with the talus migrated approximately two centimeters proximately and medially, and two screws, both of which appeared to be loose. (Id.). There was also subtalur joint arthritis. (Id.). At a later visit for a disability examination, Dr. Hockenbury found an absent right ankle reflex and obtained a lumbar spine x-ray showing grade one spondylothesis. (Tr. 318). He felt that the plaintiff's complaints of low back, left hip, and left knee pain were due to a

---

[2]Both Dr. Hockenbury and Dr. Johns completed functional capacity assessments providing limitations inconsistent with full-time work activity. (Tr. 302-10).

10

leg length discrepancy. (Tr. 319). He advised fusion surgery on the right ankle, which, combined with a shoe lift, would improve Mr. Epperson's function dramatically and "possibly return him to at least some sedentary work." (Id.). The x-ray findings appear to be consistent with two previous x-rays in 2004 which showed "marked" or "severe" deformity of the ankle joint (Tr. 181, 269) and a January, 2003 x-ray also showing "severe" post traumatic changes (Tr. 294).

Dr. Johns also had Dr. Hockenbury's x-rays available for review at the time she completed her functional capacity assessment, and, although her reports are not as detailed, she noted that it was painful for the plaintiff to bear weight on his right leg, that he had a decreased range of motion of the right ankle and back, and a tender sacroiliac joint to palpation. (Tr. 327).

By contrast, the consultative examiner, Dr. Walters, evidently did not have any objective evidence such as x-rays to review. (Tr. 189-91). Drs. Saranga and Brown may have had one of the earlier x-rays available, but did not specifically note it in their reports, which were primarily based on the narrative report of Dr. Walters. (Tr. 200, 249). Dr. Hockenbury would appear to have had more of an objective basis for his opinion than Dr. Walters or the non-examiners.[3] Moreover, as a treating source and a specialist, his opinion would be generally entitled to superior

---

[3] Dr. Walters would not have known anything about the surgical screws being loose, for instance.

11

08-228  Peter Lee Epperson

weight, in any case.  Dr. Johns was not a specialist, but she did see the plaintiff on a number of occasions.  Under the circumstances, the court agrees with the plaintiff that a more thorough explanation should have been provided, at a minimum, if the treating source opinions were to be rejected.

The decision will be remanded for further consideration of the factors outlined in this opinion.

This the 12th day of May, 2009.

Signed By:

*G. Wix Unthank*

**United States Senior Judge**